Totten, J.,
delivered the opinion of the court.
The prisoner, Wiley, a free person of color, was convicted, in the circuit court of Maury, at September term, 1851, upon a charge, that he had feloniously tempted and persuaded a negro slave, Jesse, to leave his owner, with the intent to deprive the owner of him.
This offence is defined, and made a felony by the act of 1835, ch. 58.
Pending the trial, the jury were permitted, by consent of the State’s Attorney and the prisoner, to disperse and separate from one day to another. And it is now argued, that this is error, for which a new trial should be granted.
This subject was considered by this court in Wesley vs. The State, 11 Humph. R., 502, where it was held, that in a capital felony, the separation of the jury, though with the prisoner’s consent, was error, for which a new trial should be granted.
Unquestionably, the separation of the jury, unexplained, and without the prisoner’s consent, is error in all felonies, whether capital or not. Hines vs. State, 8 Humph. R., 602; McLain vs. State, 10 Yerg. R., 241.
For the law intends, that the verdict shall rest alone no the *257 proof in the case, and be the true and necessary result thereof. It will not, therefore, permit the jurors to be exposed to any foreign influence, to be effected by tampering with them, or advising them as to the state of public opinion, or otherwise impressing their minds as to the verdict they shall render.
Now, can the court dispense with the rule of law, in this respect, if the prisoner consent?
It is true, that in general, a person may waive his right, and be concluded by his waiver.
To this there seems to be no objection, when it can be assumed, that the act was done in the free and unembarrassed exercise of his judgment and discretion.
Now, in the present case, the prisoner did not rest upon his rights, but consented to the separation of the jury. This he did for their convenience and accommodation. Could he have refused, “without exciting that feeling against him, which any person, in his situation, would wish to avoid.” To say the least, his refusal would have been construed, as a want of confidence in the integrity of the jurors, or, in their sense of duty. And they would further be impressed, perhaps prejudiced, by the consideration, that he alone was the cause of their inconvenient and disagreeable confinement, from the beginning to the close of the trial.
. In such a case, we cannot suppose, that the prisoner’s mind is free and unembarrassed, so as to enable him to exercise a proper discretion. Nor do we think, that the responsibility of a refusal should be imposed upon him.
In Wesley vs. State, the court say, that the consent of a prisoner in a capital case, ought not to be taken. And, we now think, that it should not be asked or taken in any case of felony, whether capital or not.
For in many cases of felony, though it may not be so in the present case, the character and liberty of the prisoner would be justly held by him, as dearer than his life.
*258 We may further observe, in the policy of the rule, that verdicts are often vitiated, and new trials granted for improper and irregular conduct of jurors, during the period of their separation.
This will be, in a great degree, avoided by adhering to the rule.
For this error, therefore, the judgment will be reversed, and a new trial granted — for which purpose the prisoner will be remanded.